UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
LEON JONES,

                Petitioner,

       -against-

THOMAS GRIFFIN, Superintendent of Green
Haven Correctional Facility,[1]

              Respondent.
--------------------------------------------------------x

**MEMORANDUM AND ORDER**
11-CV-510 (PKC)

PAMELA K. CHEN, United States District Judge:

       Petitioner Leon Jones ("Petitioner" or "Jones"), appearing *pro se*, petitions this Court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, challenging his conviction and sentence entered on July 16, 2007 in the Supreme Court of the State of New York, Nassau County. Petitioner claims that: (1) the trial court erred in summarily replacing a juror who failed to appear; (2) the evidence at trial was legally insufficient to support the judgment of conviction; and (3) his right to confrontation was denied. For the reasons set forth below, the petition is denied in its entirety.

## BACKGROUND

### I.    Trial

       Petitioner was indicted and charged with two counts of Robbery in the First Degree, one count of Assault in the Second Degree, and one count of Assault in the Third Degree, following an incident in which James Waller and Alfred Thomas were assaulted and robbed in Hempstead,

---

[1] Because William Lee is no longer the Superintendent at the Green Haven Correctional Facility, Thomas Griffin is substituted as Defendant in this lawsuit, pursuant to Federal Rule of Civil Procedure 25(d).

Nassau County at around 10:30 p.m. on August 23, 2006. Petitioner went to trial, separate from his co-defendants, before the Honorable John L. Kase in Nassau County on May 21, 2007. The jury was selected on May 22, 2007. The following day, before opening statements or testimony had commenced, one of the selected jurors did not appear at 11:30 a.m., the time at which they were requested to appear. (T. 172.)[2] Judge Kase replaced the missing juror with the first alternate. (T. 177.) The record does not reflect whether he waited for a period of time or whether he consulted with the attorneys, before replacing the absent juror.

At trial, the State's evidence included the testimony of victim-witnesses Waller and Thomas about the incident and their identifications of the perpetrators, and the testimony of two Nassau County Police Department ("NCPD") detectives, Francis McNally and Matthew Ross, about the investigation of the crime and the line-up identification procedures conducted as part of the investigation. Waller testified that an acquaintance of his, Crystal Black, called him on the evening of August 23, 2006, and arranged to meet him at a drive-through restaurant in Hempstead to "have a sexual encounter." (T. 208, 210.) He described the arrangement for each of them to bring a friend, and he brought his friend Alfred Thomas. (T. 210-11.) Waller testified that when he arrived at the location and could not locate Black's car, he called her, and she eventually directed him to meet her on Maryland Avenue. (T. 212-14.) Waller testified that the residential street "was real dark and it is a one-way block." (T. 214.) He stated that he got out of his car to talk to Black, who was in her car, when two individuals came from behind Black's car and approached him. (T. 217.) He stated: "I got a good look at both of them." (T. 219.) He testified that both individuals had guns. (T. 220.) He testified that one of the individuals, whom he later

---

[2] "T." refers to the transcript of Petitioner's jury trial from May 22, 2007 to May 29, 2007. (Dkt. 12-1, 12-2, 12-3, and 12-4.)

identified as Daniel Thompson, struck him in the face, back, and arm with a gun; ripped his shirt off; and took his chain, hat, and money. (T. 217, 222, 306.) Waller testified that the second individual did not strike him or rob him. (T. 272.)

Waller testified that he ran from the scene and called the police. (T. 224.) After police officers arrived, Waller testified, they found his hat and chain and a cell phone that he did not recognize. (T. 227-28.) He testified that when the phone vibrated a second time, he answered it at the direction of Detective McNally, told the caller that he had found the phone, and got an address where he could return the phone. (T. 236-37.) He also testified to answering a second call from an individual whom he recognized as Crystal Black. (T. 238.)

Waller testified that he viewed a line-up at the police precinct on November 8, 2006, at which he identified Jones as the second perpetrator from the incident on August 23, 2006. (T. 241, 243.) He also described a line-up on November 27, 2006, at which he identified Daniel Thompson as the first perpetrator, who had assaulted and robbed him. (T. 244-246.)

Petitioner's trial counsel, Lori Golombek, opened her cross-examination of witness Waller by questioning him about his past marijuana possession and use. (T. 274.) When Golombek asked if Waller also sold marijuana, Judge Kase sustained the prosecutor's objections and also disallowed questions about Waller's past convictions. (T. 275-76, 278-79.) In a sidebar conversation, Golombek stated that she had based these questions on testimony given by Crystal Black at a prior proceeding that Waller had sold marijuana to her in the past and that the purpose of meeting on August 23, 2006 was to get marijuana from him. (T. 276.) Judge Kase told Golombek that she was "creating a collateral issue that is not part of this trial," and warned her that introducing Black's prior testimony to impeach Waller would open the door to other parts of Black's prior testimony in which she implicated Jones in the August 23, 2006 incident. (T. 276-

278.)  Judge Kase allowed Golombek to continue, but cautioned her that: "You are bound by his

answers."  (T. 278.)  Golombek questioned Waller about Black's intention that evening, and he

testified that Black had asked him to bring some weed and that he told her "I don't hustle."  (T.

280.)

Golombek also questioned Waller about a written statement prepared by a police officer

that Waller signed on the evening of August 23, 2006.  (T. 302.)  After showing Waller the

statement, Golombek asked: "Isn't it true that you signed a statement saying, as I was talking to

Crystal[,] two male blacks ran at me from behind Crystal's car with a handgun pointed at me?

Isn't it true that you signed a statement saying that?"  (T. 303.)  Judge Kase interjected:

> THE COURT: You think that that is a singular gun as opposed to two people
> running at him with each holding a gun?
>
> MS. GOLOMBEK: Correct.
>
> THE COURT: That's because of the way the grammar is set up. It is because
> grammatically it sounds that way to you.  He didn't write that statement, and he
> signed it. . . . He testified that each person came up and approached in his
> direction with a handgun, he identified the people who did it, he identified the
> types of guns.  What you are suggesting is that a statement written by another
> person saying that two men rushed at him with a gun means that only there was
> one gun [*sic*], and that he should adopt that because he signed that statement. Is
> that what you are saying?

(T. 303-04.)  Golombek declined the opportunity to put the statement into evidence. (T. 302.)  The

following day, she sought a mistrial, stating:

> You then asserted your opinion, which I believe is inappropriate, Judge. . . .
> Whether the jury wants to believe or disbelieve or adopt any part of what I say
> they can do that, Judge.  But I don't believe that it is the province for you to
> point out to the jury what I am trying to do. . . . Judge, I submit that you are
> undermining my credibility, not only to the jurors, but to my client as well,
> Judge.  I submit, in essence, you are depriving my client of a fair trial.

(T. 311-12.)  Judge Kase denied the motion for a mistrial.  (T. 313.)

Upon resuming her cross-examination of Waller, Golombek sought to impeach Waller with inconsistencies between his trial testimony and his grand jury testimony. (T. 317-323.) Golombek elicited from Waller that, during the August 23, 2006 incident, he had concentrated on the first perpetrator and not on the second (T. 326, 328), and that he was in a panic and had feared for his life (T. 305-06, 333). She also questioned him about the line-up procedures, and he testified that he was given no instructions regarding the line-up. (T. 337-38.)

NCPD Detective McNally testified to being called to the scene on August 23, 2006, meeting the complaining witnesses, recovering the cell phone, and learning about Crystal Black's identity and an address in Jamaica, Queens from calls to the phone. (T. 345-356.) He testified that he used that information to interview and arrest Black later that evening and to apprehend Daniel Thompson and Petitioner the next day. (T. 352-57.) He also testified about the lineup procedures on November 8 and November 27, 2006, and stated that he instructed Waller "that he would be viewing some people through a two-way pane of glass and; that if he recognized anybody he would have to say the number of the position that the person was sitting in." (T. 358-363.)

On cross-examination, McNally acknowledged that he took no fingerprints from the crime scene (T. 378), that he found no record of calls made from Jones's cell phone to the cell phone recovered at the scene (T. 382), and that none of the victims' property was found on Jones when he was arrested the following day (T. 393). McNally also testified about his interview with Waller and that Waller told the detective that two handguns were used during the August 23, 2006 incident, including one held by the second perpetrator. (T. 379-80.) He also testified that the witnesses described the second perpetrator as being 6 feet tall, while Jones is 5 feet, 8 inches. (T. 386.)

Alfred Thomas testified that he was sitting in Waller's car when an individual stuck a gun to his head, pulled him from the car, threw him to the ground, and robbed him. (T. 403, 414-15.) He stated that he saw the face of the individual who robbed him and identified him as Jones. (T. 404, 415.) On cross-examination, Golombek questioned Thomas about a prior conviction in 1993 or 1994 for disorderly conduct and highlighted inconsistencies in his testimony, including the amount of light in Black's car on August 23, 2006 and whether he knew if Waller smoked marijuana. (T. 406, 436-40, 447.) Golombek questioned Thomas about the line-up identification procedure on November 8, 2006 and asked: "And you were told you had to pick someone out; isn't that correct?" (T. 474.) Thomas responded, "Yeah." (*Id*.)

During a break in Golombek's cross-examination of Thomas, outside the presence of the jury, Judge Kase told Golombek that she was "jumping back and forth, and it is becoming somewhat repetitious." (T. 461.) He further instructed her: "[C]onduct your cross-examination questions in a cohesive manner, so the jury can follow where you're going with it." (T. 462.)

Finally, NCPD Detective Ross testified as to the line-up procedure he conducted on November 8, 2006. He stated that he did not instruct Waller or Thomas to make an identification and did not tell them that they had to identify someone. (T. 482, 486, 488.)

The defense called one witness, Candice Williams, who provided an alibi for Petitioner. She testified that Jones was with her all day and evening on August 23, 2006, except for a five-minute window around 10:00 p.m. (T. 501-02.) On cross-examination, Williams acknowledged that she had not given this information to the police or district attorney and that the only individuals to whom she had provided this information were Ms. Golombek and the private investigators working with Ms. Golombek. (T. 512, 514-15.) She testified that at the time of the incident she

was pregnant with Petitioner's child and had planned to move away from New York with him. (T. 500-01, 530-31.)

Before the conclusion of the trial, Petitioner's counsel made two motions to dismiss, arguing that the People had failed to present sufficient evidence to make a prima facie case and that the People's witnesses were not credible. (T. 491-92, 534-36.) Judge Kase denied both motions. (T. 493, 536.) In summation, Petitioner's counsel argued that Waller had not had sufficient opportunity to view and identify the second perpetrator (T. 542, 545-47) and that there was insufficient evidence that a robbery had occurred or that Jones had participated in it or in an assault (T. 549, 561, 571-72). Petitioner's counsel also questioned the credibility of the State's witnesses (T. 551-52, 559, 562, 564, 566) and highlighted the lack of physical evidence tying Jones to the scene (T. 554-556).

During deliberations, the jurors sent out a number of questions, including a request for "police report, testimony about one gun or two." (T. 642.) After consulting with counsel for both sides, Judge Kase told the jury: "There is no report in evidence. There is some testimony concerning a report." (T. 647.) In a follow-up note, the jurors asked for: "Testimony as to whether there was one gun or two guns." (T. 649.) The Judge answered: "The only testimony you have before you is that there were two guns. What you are probably thinking of was something not in evidence. Therefore, you cannot consider that. Only testimony." (T. 652.)

The jury reached a verdict on May 29, 2007, convicting Jones on all charges. He was sentenced on July 16, 2007, as a second violent felony offender, to multiple concurrent terms of imprisonment totaling 21 years, along with 5 years of post-release supervision.

## II. Appeal

Petitioner appealed his conviction to the Appellate Division, Second Department, asserting the following grounds: (1) the trial court erred in summarily replacing a juror who failed to appear on the first day of testimony; (2) the evidence at trial was legally insufficient to support the judgment of conviction or was against the weight of the evidence; (3) Jones was denied the right of confrontation when the trial court limited cross-examination; and (4) the sentence was excessive. (Brief For Defendant-Appellant, Dkt. 12-6.)

The Appellate Division unanimously affirmed the conviction on April 28, 2009. *People v. Jones,* 879 N.Y.S.2d 477 (2d Dep't 2009). The Appellate Division held that: the evidence was "legally sufficient to establish the defendant's guilt beyond a reasonable doubt" and "that the verdict of guilt was not against the weight of the evidence"; the trial court's interruption and limitation of cross-examination of the witnesses was appropriate, and even if some actions could be considered inappropriate, any error was harmless because of the overwhelming evidence of Jones's guilt; any issue regarding the replacement of an absent juror was unpreserved for appellate review; and the sentence was not excessive. *Id.*

The New York Court of Appeals denied leave to appeal on June 25, 2009. *People v. Jones,* 12 N.Y.3d 917 (2009). Petitioner's conviction became final 90 days later, on September 23, 2009, when the time for him to seek a writ of certiorari from the United States Supreme Court expired. *See Williams v. Artuz,* 237 F.3d 147, 150 (2d Cir. 2001) (under *habeas* review, a petitioner's conviction becomes final when his time to seek direct review in the Supreme Court expires). It does not appear from the record that Petitioner sought collateral review in state court.

### III.    *Habeas* Petition

Although the Court did not receive the instant petition until January 24, 2011, Petitioner declares under penalty of perjury that he submitted it to prison authorities for mailing on September 19, 2010. (Dkt. 1 at ECF[3] 14.) In the section of the form petition to assert timeliness, Jones states: "Petition herein is filed within one year of the date my conviction became final." (*Id.* at ECF 13.) Petitioner seeks relief on three of the same grounds raised in his direct appeal: (1) the trial court erred in summarily replacing a juror who failed to appear; (2) the evidence at trial was legally insufficient to support the judgment of conviction or was against the weight of the evidence; and (3) Petitioner was denied the right of confrontation when the trial court limited cross-examination. (*Id.* at ECF 16-17.) The petition itself did not describe the basis for these claims, but made reference to "Issues raised on direct appeal." (*Id.* at ECF 16.)[4] Respondent submitted an initial opposition to the petition on April 5, 2011, addressing only the issue of timeliness of the petition. (Dkt. 6.) Jones submitted a reply on April 15, 2011, in which he reiterated his claim that he initially filed the petition in September 2010. (Dkt. 7.) Thereafter, the Court directed Respondent to file a response to the merits of the petition. (Dkt. 10.) Respondent submitted its opposition to the petition on April 11, 2012. (Dkt. 12.) Respondent argues that Jones's claim regarding the trial court's substitution of a juror is procedurally barred and that his claims about the sufficiency and weight of the evidence and about the right of confrontation are without merit.

---

[3] "ECF" refers to the pagination generated by the Court's CM/ECF docketing system, and not the document's internal pagination.

[4] Although Petitioner does not specifically cite to his appellate brief, the Court construes his otherwise slim Petition and its references to the grounds raised on appeal as relying on the arguments made in the appellate brief.

On June 25, 2012, Petitioner sought to stay this matter to allow him to exhaust his state law remedies. (Dkt. 13.) Respondent opposed that request based on the untimeliness of the request, as well as the *habeas* petition itself, and Petitioner's failure to identify any ineffectiveness by his attorney that would support a state court motion under C.P.L. § 440.10. (Dkt. 14.) On July 11, 2012, the Honorable Sandra J. Feuerstein, to whom this matter was then assigned, denied Petitioner's stay request on the basis that Petitioner had "not shown good cause for his first failure to exhaust his claims first in state court." (Dkt. 15.) On July 23, 2012, Petitioner responded to the denial by renewing his request, thereby seeking, in effect, to have Judge Feuerstein reconsider her decision denying the stay. (Dkt. 16.) On April 25, 2013, while Petitioner was awaiting a response to his second stay motion, this matter was re-assigned to this Court. On August 19, 2013, the Court received a letter from Petitioner in which he acknowledged Respondent's argument that his juror claim was unexhausted, and requested that the Court either waive the exhaustion requirement or permit him to withdraw that issue so that the remaining claims could be resolved on their merits. (Dkt. 20.)[5] On August 19, 2014, the Court denied Petitioner's second stay request, finding that he still had not "explain[ed] how his appellate attorney was ineffective, ie., what issues his appellate attorney allegedly should have, but failed to, preserve, and has also failed to show good cause for the failure to exhaust this claim." Petitioner has not submitted any further response to Respondent's opposition to his *habeas* petition.

---

[5] As discussed *infra*, the Court finds that Petitioner has, in fact, exhausted the claims he raises in his *habeas* petition.

**DISCUSSION**

**I.     Timeliness**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets a one-year limitation period for the filing of a petition for a writ of *habeas corpus* by a person in custody pursuant to a state court conviction. 28 U.S.C. § 2244(d)(1). The applicable one-year period runs from the date on which one of the following four events occurs, whichever is the latest:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id*. Subsection (A) governs the time limit for the filing of the instant petition. Under subsection (A), the one-year period within which Jones had to file a *habeas* petition began to run on September 23, 2009, which was when the time expired for him to seek a writ of certiorari from the Supreme Court. As Jones did not file any motions for collateral relief that would toll the statute of limitations, the limitations period expired on September 23, 2010.

Respondent argues that the Court should consider the date on which the petition was received by the Court, January 24, 2011, as the filing date, and suggests that Petitioner sought to circumvent the filing requirement "by back-dating his papers to September 19, 2010." (Resp.'s April 5, 2011 Mot. to Dismiss, Dkt. 6, ECF 15.) Petitioner insists that he, in fact, filed his papers in September 2010 and then awaited confirmation from the Court. (Pet.'s Reply, Dkt. 7, ECF 1.) He asserts that he waited for two and a half months, then wrote to the Pro Se Office, inquiring about the status of his petition. (*Id*. at ECF 1.) Petitioner attached to his response to Respondent's

motion to dismiss a copy of that letter, which is stamped as having been received by the Court on December 16, 2010. (*Id*. at ECF 6.) The Pro Se Writ Clerk responded, by letter dated December 20, 2010, to indicate that no papers had been received by the Court. (*Id.* at ECF 9.) Thereafter, Petitioner states, he "resubmitted an exact replication of the petition originally filed on September 21, 2010." (*Id.* at ECF 2.)

Judge Feuerstein requested further briefing by Respondent. (February 21, 2012 Order, Dkt. 10.) On March 8, 2012, the Nassau County District Attorney's Office, which represents Respondent, filed a copy of a letter that it had sent on March 1, 2012 to the Inmate Records Coordinator at Green Haven Correctional Facility. The letter stated: "I have been informed . . . that Green Haven does not keep a log of outgoing mail" and asked whether the Inmate Records Coordinator "might maintain records relevant to Mr. Jones's mailing of the petition." (Dkt. 11 at 1.) No further information about the timing of the filing of the petition has been presented to the Court.

On these facts, the Court cannot determine with any certainty whether the petition is timely—indeed, the fact that Petitioner filed a letter to inquire about the status of his petition in December 2010 (Dkt. 7 at ECF 6) lends credence to his claim that he had attempted to file it months earlier, in September 2010. Given this uncertainty, the Court declines to dismiss the petition as untimely and instead addresses the merits of Jones's petition, which has been fully briefed by Respondent.

## II. Exhaustion

As a threshold matter, state prisoners seeking *habeas* relief in federal court must have exhausted their state court remedies by "present[ing] their constitutional claims to the state courts in the first instance." *Jackson v. Conway*, 763 F.3d 115, 132 (2d Cir. 2014) (citing 28 U.S.C. §

2254(b)). "This requires that the prisoner 'fairly present' his constitutional claim to the state courts, which he accomplishes 'by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'" *Id.* at 133 (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)). "While 'a state prisoner is not required to cite chapter and verse of the Constitution in order to satisfy this requirement,' he must tender his claim 'in terms that are likely to alert the state courts to the claim's federal nature.'" *Id.* (quoting *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011)).

Here, Jones has properly exhausted each of the three claims in his *habeas* petition by raising them on appeal and again in his request for leave to appeal to the Court of Appeals.[6]

## III.    Petitioner's Procedurally-Barred Claim

Respondent contends that one of Petitioner's claims—relating to the trial court's substitution of an absent juror at trial—is procedurally defaulted. The Court agrees.

### A.    Relevant Law

A federal court generally is precluded from reviewing a *habeas* claim if the state court's prior denial of that claim rests on an adequate and independent state ground. *See, e.g.*, *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Wainwright v. Sykes*, 433 U.S. 72, 81 (1971). A petitioner's failure to comply with a state procedural rule qualifies as such an adequate and independent state ground, provided that (1) the state court actually "relied on the procedural bar as an independent basis for its disposition of the case," *Harris*, 489 U.S. at 261-62 (internal quotation marks and citation omitted), and (2) the state procedural rule is "firmly established and regularly followed,"

---

[6] Contrary to Respondent's claim in the Memorandum of Law in Opposition to the Petition, Jones's appellate counsel did raise each of these claims in his letter supporting the application for leave to appeal to the Court of Appeals, by specifically relying on the arguments made in the appellate brief. (June 2, 2009 Letter from Joseph F. DeFelice, Dkt. 12-9, at 1.)

*James v. Kentucky*, 466 U.S. 341, 348 (1984). *See Cotto v. Herbert*, 331 F.3d 217, 239-40 (2d Cir. 2003). A state court's express reliance on a procedural ground as one basis for the denial of the claim precludes federal *habeas* review, even if the state court proceeds to consider the merits of the claim. *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996); *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990). In determining whether to deny a *habeas* claim on that basis, however, federal courts "apply a presumption against finding a state procedural bar and 'ask not what we think the state court actually might have intended but whether the state court plainly stated its intention.'" *Galarza v. Keane*, 252 F.3d 630, 637 (2d Cir. 2001) (quoting *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000)).

A petitioner may obtain federal *habeas* review of a procedurally-defaulted claim if the petitioner demonstrates either "cause for the default and prejudice," or that "failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722, 748-50 (1991)). To establish cause for a procedural default, a petitioner must show "some objective factor external to the defense" that explains why he did not previously raise the claim. *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show prejudice, a petitioner must demonstrate that the failure to raise the claim previously had a substantial injurious effect on the petitioner's case such that he was denied fundamental fairness. *Reyes v. New York*, No. 99 Civ. 3628, 1999 WL 1059961, at *2 (S.D.N.Y. Nov. 22, 1999) (citing *Murray*, 477 U.S. at 494).

### B. Procedural Bar Applied to Petitioner's Claim Regarding Juror Substitution

The Appellate Division found that Petitioner's claim related to the substitution of an absent juror was unpreserved for appellate review under C.P.L. § 470.05. *Jones*, 879 N.Y.S.2d at 478.

Because the Appellate Division expressly based this determination on a state procedural rule, it constitutes an independent and adequate ground that bars federal *habeas* relief. *Harris*, 489 U.S. at 260-61. This claim is therefore procedurally barred from *habeas* review unless Petitioner can establish "cause and prejudice" for the default or show that a miscarriage of justice will occur absent review. Petitioner has failed to establish either. On appeal, Petitioner did not allege ineffective assistance of his trial attorney based on her failure to object to the substitution of the absent juror. *Murray,* 477 U.S. at 488-89 (ineffective assistance of counsel can constitute "cause" for a procedural default if a separate claim of ineffective assistance of counsel based on the alleged error has been brought and exhausted in state court). Thus, Petitioner has not shown good cause to excuse his failure to preserve this claim. Moreover, Petitioner does not contend that the trial court's alleged failure to comply with New York Criminal Procedure Law Section 270.35(2)(a), requiring the judge to wait for two hours before replacing an absent juror with an alternate juror, caused a miscarriage of justice. Therefore, the Court is barred from reaching the merits of this claim.[7]

---

[7] Even if the Court were to consider the merits of this claim, Petitioner has not demonstrated that the trial court's failure to follow this state procedural rule implicated any federal constitutional right or that he suffered any prejudice when an alternate juror was seated after a jury was selected and prior to the commencement of opening statements. *See Forino v. Lee*, No. 10-CV-5980 (MKB), 2016 WL 7350583, at *9 (E.D.N.Y. Dec. 19, 2016) ("Courts in this Circuit have held that a trial court's dismissal of an unavailable juror involves only an application of state law and alone does not present a federal constitutional question cognizable on habeas review." (collecting cases)); *Wray v. Johnson,* 202 F.3d 515, 525 (2d Cir. 2000) (petitioner must show that the alleged error had a "substantial and injurious effect or influence in determining the jury's verdict") (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993)); *United States v. Gambino,* 951 F.2d 498, 503 (2d Cir. 1991) (reviewing court should not disturb trial judge's exercise of discretion in discharging a juror unless there is prejudice to defendant).

**IV. Merits of Petitioner's Non-Procedurally-Barred Claims**

Petitioner's remaining claims set forth two grounds for relief alleging the following federal constitutional claims: (1) Petitioner's right to due process was violated because the evidence was insufficient to convict and the verdict was against the weight of the evidence; and (2) he was denied the right of confrontation when the trial court limited cross-examination of the two victim-witnesses, Waller and Thomas.

**A. Standard of Review under 28 U.S.C. § 2254**

Section 2254 provides that a *habeas corpus* application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Norde v. Keane,* 294 F.3d 401, 410 (2d Cir. 2002) (internal quotation marks and citation omitted).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." *Howard v. Walker,* 406 F.3d 114, 122 (2d Cir. 2005) (internal quotation marks and citation omitted). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" Supreme Court cases, or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Penry v. Johnson,* 532 U.S. 782, 792 (2001) (citation omitted).

A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* (citation omitted). AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams v. Taylor,* 529 U.S. 362, 411 (2000)). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello,* 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner,* 459 F.3d 200, 203 (2d Cir. 2006)).

### B.     Sufficiency of the Evidence

Petitioner argues that the verdict should be vacated because the evidence was insufficient for conviction and was against the weight of the evidence. (Dkt. 1 at ECF 16.) As an initial matter, Petitioner's claim that the verdict was against the weight of the evidence is not cognizable on federal *habeas* review. *See Lopez v. Superintendent of Five Points Corr. Facility*, No. 14-CV-4615 (RJS)(JLC), 2015 WL 1300030, at *12 (S.D.N.Y. Mar. 23, 2015), *report and recommendation adopted*, No. 14-CV-4615 (RJS)(JLC), 2015 WL 2408605 (S.D.N.Y. May 20, 2015) ("It is well-established that a weight of the evidence claim is exclusively a matter of state law and therefore presents no federal question reviewable by a federal habeas court." (collecting

cases)); *Blake v. Martuscello*, 10-CV-2570 (MKB), 2013 WL 3456958, at *9 (E.D.N.Y. July 8, 2013) ("It is well settled that a 'weight of the evidence' claim . . . is not reviewable in [a] federal habeas proceeding." (collecting cases)); *Kearse v. Artuz*, No. 99 Civ. 2428 (TPG), 2000 WL 1253205, at *1 (S.D.N.Y. Sept. 5, 2000) (summarily dismissing challenge to verdict against the weight of the evidence on the ground that "[d]isagreement with a jury verdict about the weight of the evidence is not grounds for federal habeas corpus relief").

The Court, therefore, only addresses the merits of Petitioner's claim that the evidence introduced at trial was insufficient to support his conviction. *Blake*, 2013 WL 3456958, at *9 (a "'weight of the evidence' claim is distinct from a 'sufficiency of the evidence' claim"); *Walton v. T.J. Ricks*, 01 Civ. 5265 (LMM), 2003 WL 1873607, at *6-7 (S.D.N.Y. Jan. 31, 2003) (under New York law, "attacks on a verdict based on the weight of the evidence are different from those based on the legal sufficiency of the evidence[,]" the latter of which is based on "federal due process principles"). Petitioner only advanced this claim as to his conviction on the charges related to victim Waller, arguing that "there is no legally sufficient evidence that [Petitioner] acted with the same mental culpability or that he solicited, commanded or intentionally aided the first individual, Daniel Thompson, to commit the assault on Waller." (Brief for Defendant-Appellant, Dkt. 12-6, ECF 17.) The remaining claims Petitioner advanced in his direct appeal and incorporated by reference in the instant *habeas* petition relate to his alternative weight-of-the-evidence arguments challenging his conviction on the charges related to victim Alfred Thomas.

The circumstances in which a federal district court may grant *habeas* relief based on insufficiency of the evidence are extremely narrow. As the Supreme Court recently explained: "The opinion of the Court in *Jackson v. Virginia*, 443 U.S. 307 (1979), makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from

evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). "[E]vidence is sufficient to support a conviction so long as 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id*. at 7 (quoting *Jackson*, 443 U.S. at 319). "To have a colorable sufficiency of the evidence claim, [Petitioner] would need to show that the prosecution failed to prove all the elements of the offenses charged." *Alexis v. Griffin*, No. 11 Civ. 5010 (DLC) (FM), 2014 WL 3545583, at *20 (S.D.N.Y. July 18, 2014), *report and recommendation adopted*, 2014 WL 5324320 (S.D.N.Y. Oct. 20, 2014).

In this case, Petitioner argues that the evidence was insufficient to show that he participated in or encouraged the assault on victim Waller. The New York Supreme Court, Appellate Division considered this argument and found that the evidence was "legally sufficient to establish the defendant's guilt beyond a reasonable doubt." *Jones*, 879 N.Y.S.2d at 478. The evidence at trial included victim-witness Waller's statement that he was lured to a dark street; that he saw two individuals approach together, each holding a gun; that one of the individuals assaulted and robbed him; and that he later identified Jones as the second perpetrator. Viewed in the light most favorable to the prosecution, this evidence was sufficient for a rational trier of fact to find that the attack and robbery of Waller was part of a joint enterprise in which Defendant Jones participated. Thus, the Court finds that the state court's decision was neither contrary to established federal law nor was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly, the Court finds that Petitioner's claim that the evidence was legally insufficient to support the conviction is without merit.

## C.     Right of Confrontation

Petitioner claims that his right to confrontation was violated when Judge Kase limited Petitioner's counsel's questioning of the two victim-witnesses and directed her to conduct her cross-examination in a more cohesive manner.

A defendant's right to confront the witnesses against him is protected by the Sixth Amendment.  "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."  *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974).  Cross-examination allows the defendant to test "the believability of a witness and the truth of his testimony," both by testing the witness's perceptions and memory and by impeaching the witness with prior convictions or "possible biases, prejudices, or ulterior motives."  *Id.* at 316.  However, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant."  *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  "The scope and extent of cross-examination lies within the discretion of the trial judge.  A trial judge abuses his discretion in curtailing cross-examination of a government witness when the curtailment denies the jury sufficient information to make a discriminating appraisal of the particular witness's possible motives for testifying falsely in favor of the government."  *United States v. Blanco*, 861 F.2d 773, 781 (2d Cir. 1988) (internal citations and quotations marks omitted).  As the Supreme Court has explained, the right to confrontation guarantees only the "opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  *Van Arsdall*, 475 U.S. at 679 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam)).

The Appellate Division considered Petitioner's claim regarding the trial judge's alleged curtailment of cross-examination, and held that "[t]he trial court's intervention appropriately clarified the issues, precluded unnecessarily repetitive examination, and ensured the orderly and expeditious progress of the trial." *Jones*, 879 N.Y.S.2d at 478 (internal quotation marks and citations omitted). It also found that, "even if some of the court's actions could be considered inappropriate, any error was harmless, as there was overwhelming evidence of the defendant's guilt and there is no significant probability that any such error contributed to the defendant's conviction." *Id.*

Petitioner renews these claims here, alleging that the trial judge tried to direct the style of Golombek's cross-examination, limited some of her questions about Waller's involvement with marijuana, and curtailed questioning about, and presented the Judge's own analysis and summary of, Waller's statements to the police about the number of guns Waller saw in the hands of the perpetrators. However, none of these directions from the trial judge limited Petitioner's right to confrontation. Judge Kase's admonition to Golombek to conduct her cross-examination of Waller in a "cohesive manner" was advice, given outside of the presence of the jury, and she was nonetheless permitted to proceed with her cross-examination, without further comments about being "cohesive" or any restrictions being placed on the cross-examination itself. There is simply no evidence in the record that Judge Kase's comments about Golombek's style of cross-examination limited her ability to test the witness's credibility.

With respect to Golombek's attempts to question Waller about whether he had sold marijuana in the past, Judge Kase properly limited the cross-examination to whether Waller had intended to sell marijuana to Black on the night of the incident—which Waller denied. Golombek chose not to call Black to impeach Waller's denial, and did not proffer any other basis for

introducing Black's testimony from the prior proceeding to impeach Waller. Accordingly, the trial judge correctly precluded Petitioner's counsel from questioning Waller about what Black had testified to in the prior proceedings regarding Waller, and properly told counsel that "you are bound by his answers."

Petitioner also argues that the trial judge's handling of defense counsel's cross-examination of Waller about his signed statement to the police denied him the right to confront the witness. At trial, when Golombek began to question Waller about the statement, Judge Kase asked her if she was suggesting that Waller's statement, which had been taken down by the police, that "two male blacks ran at me from behind Crystal's car with a handgun pointed at me" was inconsistent with his trial testimony that both individuals had a gun. Despite the Judge then disputing that suggestion in the presence of the jury, Golombek was able to question Waller about the prior statement and seek to offer it into evidence, which she chose not to do.

Later, during jury deliberations, in response to a jury note requesting the "police report, testimony about one gun or two[]," Judge Kase told the jurors, after consulting with the parties: "There is no report in evidence. There is some testimony concerning a report." When the jury sent out another note asking for: "Testimony as to whether there was one gun or two guns[,]" the judge told the jury: "The only testimony you have before you is that there were two guns. What you are probably thinking of was something not in evidence. Therefore, you cannot consider that. Only testimony." In fact, the only evidence that was adduced at trial about the guns was Waller's testimony that both men were holding guns, Detective McNally's testimony that Waller told him, the night of the incident, that there were two guns, and Thomas's testimony that the second perpetrator held a gun to his head. Thus, the Judge's statement that the only testimony was that there were two guns was an accurate summary of the evidence.

While, as the Appellate Division noted,[8] the trial judge's handling of defense counsel's cross-examination of Waller regarding the number of guns at the scene—in particular, his comments disputing the inference that defense counsel wanted to argue to the jury and his summary of the evidence in response to the jury's notes—may have been unnecessary or inappropriate, the Court cannot find based on the record that this conduct violated Petitioner's right to confront the witnesses or his right to due process, given that the defense had a reasonable opportunity to cross-examine the witnesses and test their credibility, and to introduce extrinsic evidence, *e.g.*, Waller's prior statement and Black's prior testimony, that might have served to impeach the victim-witnesses. Therefore, Petitioner's claim that his right to confrontation was violated is without merit.

Accordingly, the Court finds that the Appellate Division's decision affirming Petitioner's convictions and sentence is not "contrary to, and does not involve an unreasonable application of, clearly established Federal law[,]" and that it also does not constitute "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## CONCLUSION

For the reasons set forth above, the petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 is denied. Jones is denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Middleton v. Att'ys Gen.,* 396 F.3d 207, 209 (2d Cir. 2005) (denying certificate of appealability where petitioner has not shown that "reasonable jurists could debate whether the petition should have

---

[8] The Appellate Division specifically found that even if some of the trial judge's actions could be considered inappropriate, any error was harmless because of the overwhelming evidence of Jones's guilt. *Jones*, 879 N.Y.S.2d at 478.

been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks and citation omitted)).  Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States,* 369 U.S. 438, 444-45 (1962).  The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated:  January 17, 2018
         Brooklyn, New York